FILED
JAN - 6 2012
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

PRINCE WILLIAM COUNTY, VIRGINIA, )
a political subdivision of the )
Commonwealth of Virginia, )
McCoart Administrative Building, )
1 County Complex Court, )
Prince William, VA 22192 )
 )
      Plaintiff, )
 )
      v. )
 )
ERIC HOLDER, )
Attorney General of the )
United States of America; )
THOMAS E. PEREZ, )
Assistant Attorney General, )
Civil Rights Division, United States )
Department of Justice, Washington, DC, )
 )
      Defendants. )
_____ )

Case: 1:12-cv-00014
Assigned To : Huvelle, Ellen S.
Assign. Date : 1/6/2012
Description: 3-Judge Court

Three-Judge Court Requested

## COMPLAINT

Prince William County, Virginia alleges that:

1. This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter "Section 4"). This Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(4), 28 U.S.C. §2201, 42 U.S.C. §1973b, and 42 U.S.C. §1973l(b).

2. Plaintiff Prince William County ("the County") is a political subdivision of the Commonwealth of Virginia and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1). The County is located in Northern Virginia, in the suburbs of Washington DC.

3. There are six elected governmental units within the meaning of 42 U.S.C. § 1973b(a)(1) that exist within Prince William County: The Prince William County Board of Supervisors, the Prince William County School Board, and the Towns of Dumfries, Haymarket, Occoquan, and Quantico.

4. The Prince William County Board of Supervisors is the governing body that formulates policies for the administration of government in Prince William County. Prince William County government operates under the County Executive form of government. The County Executive is appointed by the Board of Supervisors, and acts as the chief administrative officer and oversees the County government on a day-to-day basis. The eight-member Board is elected from seven single-member districts (with one seat elected at-large) by the residents of Prince William County and is the policy-making body for the County government.

5. The Prince William County School Board governs the Prince William County school system. The Prince William County School Board is also an eight member body elected from the same seven districts as the Board of Supervisors and a chair who is elected at-large. Terms of office are four years in length.

6. The towns of Dumfries, Haymarket, Occoquan, and Quantico each are governed by a town council elected at-large. The towns of Haymarket and Dumfries are each governed by a seven-member town council which includes a mayor. The towns of Occoquan and Dumfries are governed by a six-member town council which includes a mayor.

7. According to the 2010 Census, Prince William County has a total population of 402,002, of which 232, 357 (57.8%) are Non-Hispanic White, 81,204

(20.2%) are Non-Hispanic Black, 81,606 (20.3%) are Hispanic, and 30,150 (7.5%) are Non-Hispanic Asian. The County's total voting age population is 285,827, of whom 172,099 (60.2%) are White, 58,265 (20.4%) are Black, 52,354 (18.3%) are Hispanic, and 2657 (0.9%) are Asian-American.

8. Prince William County is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5, the County is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964 coverage date for Virginia.

9. Like other jurisdictions in the Commonwealth of Virginia, the County does not collect or maintain voter registration data by race. Current data show that a significant portion of the County's voting age population is registered to vote. As of December 2011, the County had 236,264 registered voters, or 59% of the County's 2010 Census voting age population (VAP). The number of persons in the County that is registered to vote has risen over the last decade. In 2000, there were 156,435 registered voters. By 2010, the number had grown to 226,396, an increase of 45%.

10. Minority candidates (African Americans and Hispanics) have been elected to office in Prince William County. For example, an African-American was recently re-elected County Sheriff. Minority candidates also have been elected to the Prince William County School Board; currently one African American and one Hispanic serve on the school board, having been sworn into office December 22, 2011.

11. Voter turnout in elections within Prince William County (*i.e.*, the percentage of those registered voters who cast ballots) varies according to the offices up

3

for election. In the presidential election years of 2004 and 2008, for example, voter turnout (as a percent of the registered voters) was 70% in 2004 and 75% in 2008. Turnout for the last two elections for local offices (county board of supervisors and school board) held in November 2007 and 2011) was 29% in 2007 and 25.7% in 2011.

12. As a political subdivision of the Commonwealth of Virginia, plaintiff Prince William County has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5 of the Act, known as the "preclearance" provisions, covered jurisdictions, including Prince William County, are required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

13. Since its inception in 1965, the Voting Rights Act has allowed States, which are subject to these special provisions of the Act, to exempt themselves from coverage under the Act's special remedial provisions, if they can satisfy standards established in the Voting Rights Act. This exemption process is known as "bailout".

14. In 1982, Congress made changes in the exemption standards of the Act. As amended in 1982, Section 4 of the Voting Rights Act provides that States, as well as political subdivisions within those States that are covered under the special provisions of the Act, are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

>A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;

4

      B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;
      C) no Federal examiners have been assigned to the political subdivision;
      D) all governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c; and
      E) the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

15. As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:

      A) Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;
      B) Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and
      C) Expanded opportunities for convenient registration and voting exist within the State or political subdivision.

16. As described in each of the paragraphs set forth below, Prince William County has fully complied with the provisions of Section 4 of the Act as set forth in paragraphs 14 and 15, *supra*.

17. Since 1980, the Prince William County, the County School Board, and the Towns of Dumfries, Haymarket, Occoquan, and Quantico have made numerous submissions to the Attorney General seeking preclearance of voting changes pursuant to Section 5 of the Voting Rights Act. These submissions include the 2011 redistricting plans for the Board of Supervisors and the School Board. All of the voting changes in these submissions have been precleared by the Attorney General. As of January 2012, every change affecting voting for each of the political subdivisions in Prince William

County has been submitted for Section 5 preclearance and has received the requisite preclearance.

18.     Over the preceding ten years, the County has engaged in a variety of constructive efforts, including efforts to expand the opportunity for registration and voting, such as providing opportunities to register to vote through a variety of offices and through the mail, conducting voter registration outreach to high school seniors, and appointing minority elections and poll officials.  Twice a year, in the Fall and Spring, the County registers high school students. The County's Voting Registrar also provides guidance to several civic organizations that hold voter registration drives throughout the county.  Most of the County's voters register at the Offices of the Division of Motor Vehicles or by mail. The County also receives voter registration applications from the County's Social Services, as well as at the County Registrar's office.

19.     Prince William County has a three-member Electoral Board, appointed pursuant to Virginia state law.  The Prince William County Registrar of Voters and the Prince William County Electoral Board are primarily responsible for all election-related functions, including voter registration, list maintenance, voter outreach, conduct of elections, and the selection of polling sites and poll workers.  Minorities have served on the Prince William County Electoral Board.

20.     In its most recent elections, the County used 76 polling places and a central absentee precinct, where Prince William County voters may vote absentee.  All polling places are accessible to those with physical disabilities.

21.     Members of racial minority groups or language minorities have served as election officials in Prince William County.  Though the County does not maintain such

6

records based on race or language minority status, the County estimates that that approximately 10% of the poll workers in the last election were African-American, Latino, or Asian American.

22. During the ten years preceding the filing of this action, no person in the Prince William County has been denied the right to vote on account of race, color, or membership in language group for at least the preceding ten years.

23. During the ten years preceding the filing of this action, no "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in the Prince William County as a prerequisite to either registering or voting.

24. During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of the County. Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds. No action is presently pending alleging such denials or abridgements of the right to vote.

25. During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for the County or School District to repeal any voting changes to which the Attorney General has objected, or to which this Court has denied a declaratory judgment, since no such objections or denials have occurred.

26. During the ten years preceding the filing of this action, and during the pendency of this action, the Attorney General has not interposed any objection to voting changes submitted by or on behalf of the County or the County School Board for

administrative review under Section 5 of the Voting Rights Act. Nor has any declaratory judgment been denied under Section 5 of the Act by or on behalf of the County or County School Board. No administrative submissions or declaratory judgment actions under Section 5 on behalf of the County or County School Board are now pending.

27.     The Prince William County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County. Minority voters in the County are not being denied an equal opportunity to elect candidates of their choice to the County Board of Supervisors, the County School Board, or the Town Councils of Dumfries, Haymarket, Occoquan, and Quantico.

28.     Federal examiners have never been appointed or assigned to the County under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

29.     There are no known incidents in the County where any person exercising his or her right to vote has been intimidated or harassed at the polls (or while attempting to register to vote).

30.     The allegations set forth in paragraphs 17 through 29, above, if established, entitle Prince William County to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §1973b, exempting the County and all governmental units within the County from the special remedial provisions of the Voting Rights Act.

31.     Pursuant to 42 U.S.C. §1973b, the County has "publicize[d] the intended commencement …of [this] action in the media serving [the County] and in the appropriate United States post offices." The County publicized the intended commencement of this action by placing advertisements in the local newspaper and

posting notice of bailout at County offices, including the Voter Registrar's office, the County's Department of Social Services, and the County Courthouse.

WHEREFORE, plaintiff Prince William County respectfully prays that this Court:

A. Convene a three-judge court, pursuant to 28 U.S.C. §2284 and 42 U.S.C. §1973b, to hear the claims raised in plaintiff's complaint;

B. Enter a declaratory judgment that the Prince William County is entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C. Grant such other relief as may be necessary and proper as the needs of justice may require.

**For the Plaintiff**
**PRINCE WILLIAM COUNTY:**

*/s/ J. Gerald Hebert*
**J. GERALD HEBERT**
D.C. Bar No. 447676
Attorney at Law
191 Somervelle Street, #405
Alexandria, Va. 22304
Tel (703) 628-4673
Email: hebert@voterlaw.com

**ANGELA HORAN**
County Attorney
1 County Complex Court
Prince William, Virginia, 22192