IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PRINCE WILLIAM COUNTY, a political subdivision of the Commonwealth of Virginia,<br><br>            Plaintiff,<br><br>    v.<br><br>ERIC H. HOLDER, JR., the Attorney General of the United States of America, and THOMAS E. PEREZ, Assistant Attorney General, Civil Rights Division, United States Department of Justice,<br><br>            Defendants. | No. 1:12-CV-00014<br>Three-Judge Court<br>(ESH-TBG-JEB) |

CONSENT JUDGMENT AND DECREE

1.      This action was initiated on January 6, 2012 by Plaintiff Prince William County ("the County") against Defendants Eric H. Holder, Jr., Attorney General of the United States, and Thomas E. Perez, Assistant Attorney General, Civil Rights Division (collectively, "the Attorney General").  Prince William County is a governmental entity organized under the constitution and laws of the Commonwealth of Virginia.

2.      The Commonwealth of Virginia became covered as a whole by certain special provisions of the Voting Rights Act based on a coverage determination made by the Attorney General and the Director of the Census, published in the Federal Register on August 7, 1965. *See* 30 Fed. Reg. 9,897 (Aug. 7, 1965).  By virtue of this coverage determination, the Commonwealth of Virginia and all of its political subdivisions (including Prince William

County) must receive preclearance under Section 5 of the Voting Rights Act for all changes enacted or implemented after November 1, 1964, that affect voting.

3.  In this action, the County seeks a declaratory judgment pursuant to Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1), exempting it from coverage under Section 4(b) of the Act, 42 U.S.C. § 1973b(b).  Exemption under Section 4(b) would in turn exempt the County and its political subunits from the preclearance provisions of Section 5 of the Voting Rights Act.  42 U.S.C. § 1973c.

4.  This three-judge Court has been convened as provided in 42 U.S.C. § 1973b(a)(5) and 28 U.S.C. § 2284 and has jurisdiction over this matter.

5.  Section 4(a) of the Voting Rights Act provides that a state or political subdivision subject to the special provisions of the Act may be exempted or "bailed out" from those provisions through an action for a declaratory judgment before this Court if it can demonstrate fulfillment of the specific statutory conditions in Section 4(a) for the time period "during the ten years preceding the filing of the action" and "during the pendency of such action," as described below:

> (A)  no such test or device has been used within such State or political subdivision for the purpose or with the effect of denying or abridging the right to vote on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section (42 U.S.C. § 1973b(a)(1)(A));
>
> (B)  no final judgment of any court of the United States, other than the denial of declaratory judgment under this section, has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of

2

such State or political subdivision or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) that denials or abridgements of the right to vote in contravention of the guarantees of subsection (f)(2) of this section have occurred anywhere in the territory of such State or subdivision and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds; and no declaratory judgment under this section shall be entered during the pendency of an action commenced before the filing of an action under this section and alleging such denials or abridgements of the right to vote (42 U.S.C. § 1973b(a)(1)(B));

(C)  no Federal examiners or observers under subchapters I-A to I-C of this chapter have been assigned to such State or political subdivision (42 U.S.C. § 1973b(a)(1)(C));

(D)  such State or political subdivision and all governmental units within its territory have complied with section 1973c of this title, including compliance with the requirement that no change covered by section 1973c of this title has been enforced without preclearance under section 1973c of this title, and have repealed all changes covered by section 1973c of this title to which the Attorney General has successfully objected or as to which the United States District Court for the District of Columbia has denied a declaratory judgment (42 U.S.C. § 1973b(a)(1)(D));

(E)  the Attorney General has not interposed any objection (that has not been overturned by a final judgment of a court) and no declaratory judgment has been denied under section 1973c of this title, with respect to any submission by or on behalf of the plaintiff or any governmental unit within its territory under section 1973c of this title, and no such submissions or declaratory judgment actions are pending (42 U.S.C. § 1973b(a)(1)(E)); and

(F)  such State or political subdivision and all governmental units within its territory - (i) have eliminated voting procedures and methods of election which inhibit or dilute equal access to the electoral process; (ii) have engaged in constructive efforts to eliminate intimidation and harassment of persons exercising rights protected under subchapters I-A to I-C of this chapter; and (iii) have engaged in other constructive efforts, such as expanded

        opportunity for convenient registration and voting for every person of voting age and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process (42 U.S.C. § 1973b(a)(1)(F)(i-iii)).

6.     Section 4(a) provides the following additional requirements to obtain bailout:

        To assist the court in determining whether to issue a declaratory judgment under this subsection, the plaintiff shall present evidence of minority participation, including evidence of the levels of minority group registration and voting, changes in such levels over time, and disparities between minority-group and non-minority-group participation. (42 U.S.C. § 1973b(a)(2));

        No declaratory judgment shall issue under this subsection with respect to such State or political subdivision if such plaintiff and governmental units within its territory have, during the period beginning ten years before the date the judgment is issued, engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section unless the plaintiff establishes that any such violations were trivial, were promptly corrected, and were not repeated. (42 U.S.C. § 1973b(a)(3));

        The State or political subdivision bringing such action shall publicize the intended commencement and any proposed settlement of such action in the media serving such State or political subdivision and in appropriate United States post offices . . . . (42 U.S.C. § 1973b(a)(4)).

7.     Section 4(a)(9) provides that the Attorney General can consent to entry of a declaratory judgment granting bailout "if based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political

4

subdivision has complied with the requirements of [Section 4(a)(1)] . . . ."  42 U.S.C. § 1973b(a)(9).

8.  The Attorney General has conducted a comprehensive and independent investigation to determine the County's eligibility for bailout.  Department of Justice attorneys have interviewed members of the local community and reviewed a significant quantity of documentary evidence, including background information; demographic data; minutes of the Prince William County Board of Supervisors, the Prince William County School Board, the Town of Dumfries, the Town of Haymarket, the Town of Occoquan, and the Town of Quantico; and the preclearance submissions of Prince William County, the Prince William County School Board, the Town of Dumfries, the Town of Haymarket, the Town of Occoquan, and the Town of Quantico.

9.  The Attorney General and the County agree that Prince William County has fulfilled all conditions required by Section 4(a) and is entitled to the requested declaratory judgment.  The parties have filed a Joint Motion for Entry of this Consent Judgment and Decree.

## AGREED STIPULATIONS

10.  Prince William County is a political subdivision of the Commonwealth of Virginia and thus a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act.  *See* 42 U.S.C. § 1973b(a)(1)(A); *see also Nw. Austin Mun. Util. Dist. No. One* v. *Holder*, 557 U.S. 193 (2009).  There are five other elected governmental units within the meaning of 42 U.S.C. § 1973b(a)(1) that exist within Prince William County: the Prince William County School Board, the Town of Dumfries, the Town of Haymarket, the Town of Occoquan, and the Town of Quantico.

11. The Prince William County Board of Supervisors is an eight-member governing body that formulates policies for the administration of government in Prince William County. Seven of the board supervisors are elected from single-member districts to serve four-year terms. One board supervisor, who serves as chairperson, is elected from the county at-large.

12. The Prince William County School Board is coterminous with the County and governs the Prince William County school system. The Prince William County School Board is comprised of eight members, seven of which are elected, from the same single-member districts as members of the Prince William County Board of Supervisors, to four-year terms. One member is elected from the county at-large to serve as chairperson of the School Board.

13. The Town of Dumfries is located within Prince William County. The Town is governed by a seven-member town council which includes a mayor. Council members are elected at-large by plurality vote and serve four-year staggered terms. One member is elected as mayor, and he or she is the ceremonial head of the government. The mayor has one vote, like any other member of the council. Elections are non-partisan.

14. The Town of Haymarket is located within Prince William County. The Town is governed by a town council consisting of six council members and a mayor. The mayor and members of the town council are elected at-large in even-numbered years, to two-year concurrent terms. The mayor, who is elected separately from the council members, presides over the council meetings and does not have a vote on the council except in the instance of a tie. Elections are non-partisan.

15. The Town of Occoquan is located within Prince William County. The Town is governed by a town council consisting of five council members and a mayor. The mayor and

members of the town council are elected at-large in even-numbered years, to two-year concurrent terms.  The mayor is the chief executive officer and is elected separately from the town council.  The mayor does not have a vote on the council except in the instance of a tie.  Elections are non-partisan.

16. The Town of Quantico is located within Prince William County.  The Town is governed by a town council consisting of five council members and a mayor.  The mayor and members of the town council are elected at-large in even-numbered years, to two-year concurrent terms.  The mayor is the chief executive officer and is elected separately from the town council.  The mayor does not have a vote on the council except in the instance of a tie.  Elections are non-partisan.

17. According to the 2010 Census, Prince William County has a total population of 402,002, of which 195,656 (48.7%) are Non-Hispanic White; 82,930 (20.6%) are Non-Hispanic Black; 81,460 (20.3%) are Hispanic; 34,600 (8.6%) are Asian; and 2,120 (0.5%) are Native American.  The County's total voting age population is 285,827, of which 148,353 (51.9%) are Non-Hispanic White; 56,533 (19.8%) are Non-Hispanic Black; 52,354 (18.3%) are Hispanic; 24,193 (8.5%) are Asian; and 1,545 (0.5%) are Native American.

18. According to the 2005-2009 American Community Survey, Prince William County has a total citizen voting age population of 215,865, of which 138,510 (64.2%) are Non-Hispanic White; 42,950 (19.9%) are Non-Hispanic Black; 17,105 (7.9%) are Hispanic; 12,470 (5.8%) are Asian; and 775 (0.4%) are Native American.

19. According to the 2010 Census, the Town of Dumfries has a total population of 4,961, of which 1,517 (30.6%) are Non-Hispanic White; 1,759 (35.5%) are Non-Hispanic Black;

7

1,328 (26.8%) are Hispanic; 221 (4.4%) are Asian; and 42 (0.8%) are Native American. The Town's voting age population is 3,445, of which 1,219 (35.4%) are Non-Hispanic White; 1,145 (33.2%) are Non-Hispanic Black; 839 (24.4%) are Hispanic; 168 (4.9%) are Asian; and 24 (0.7%) are Native American.

20. According to the 2010 Census, the Town of Haymarket has a total population of 1,782, of which 1,207 (67.7%) are Non-Hispanic White; 158 (8.9%) are Non-Hispanic Black; 173 (9.7%) are Hispanic; 202 (11.3%) are Asian; and 10 (0.6%) are Native American. The Town's voting age population is 1,215, of which 852 (70.1%) are Non-Hispanic White; 105 (8.6%) are Non-Hispanic Black; 106 (8.7%) are Hispanic; 126 (10.4%) are Asian; and 8 (0.7%) are Native American.

21. According to the 2010 Census, the Town of Occoquan has a total population of 934, of which 739 (79.1%) are Non-Hispanic White; 105 (11.2%) are Non-Hispanic Black; 37 (4%) are Hispanic; 35 (3.8%) are Asian; and 11 (1.2%) are Native American. The Town's voting age population is 828, of which 665 (80.3%) are Non-Hispanic White; 94 (11.4%) are Non-Hispanic Black; 30 (3.6%) are Hispanic; 26 (3.1%) are Asian; and 7 (0.8%) are Native American.

22. According to the 2010 Census, the Town of Quantico has a total population of 480, of which 261 (54.4%) are Non-Hispanic White; 115 (24%) are Non-Hispanic Black; 44 (9.2%) are Hispanic; 46 (9.6%) are Asian; and 4 (0.8%) are Native American. The Town's voting age population is 380, of which 221 (58.2%) are Non-Hispanic White; 89 (23.4%) are Non-Hispanic Black; 33 (8.7%) are Hispanic; 30 (7.9%) are Asian; and 2 (0.5%) are Native American.

23. No Board of Supervisors District in Prince William County has elected a minority representative for the last ten years. Nor have county voters elected a minority representative as Chairperson of the Board during that same period.

24. Two minority representatives, one African American and one Hispanic, currently serve on the Prince William County School Board. Both minority representatives were first elected in 2003. An African American representative was elected to represent the Coles district and an Hispanic representative was elected to represent the Woodbridge district. An African American is currently the Sheriff of Prince William County; he was first elected to that position in 2007 and re-elected in 2011.

25. The Dumfries Town Council currently has one African-American councilmember who was elected in May 2008. Minority candidates, either African American or Hispanic, were elected in every town election from 2002 until 2008. In addition, the Town elected an African-American mayor in 2002 and 2006.

26. Haymarket does not currently have a minority council member or a minority mayor. Hispanics previously served on the Haymarket town council in 2004, 2006, and 2008.

27. Occoquan currently has no minority representative either as mayor or as council member. No minority candidate ran for mayor or town council in Occoquan between 2002 and 2010.

28. The Town of Quantico currently has no minority representative either as mayor or as a council member. The Town had an African American town council member elected in 2002 and 2004.

29.     The Prince William County Registrar of Voters and the Prince William County Electoral Board are primarily responsible for all election-related functions, including voter registration, list maintenance, voter outreach, conduct of elections, and the selection of polling sites and poll workers.

30.     No minority has ever been appointed to the County Electoral Board.  The County has employed a number of minority persons in the office of the County Registrar of Voters.

31.     Citizens in Prince William County may register to vote in person at the County Office of Voter Registration and Elections in the City of Manassas.  Citizens may also obtain voter registration applications at additional locations in the County, including:  all libraries, post offices, most state and local government agency offices, including public assistance agencies, the Department of Motor Vehicles offices, all four town halls; on the State Board of Elections website; and by requesting that the Registrar of Voters provide an application by mail.  Citizens can also apply to register by mail and online via the Prince William County Government's website or the Virginia State Board of Election's website.  Voter registration applications are further available at all polling places on Election Day.

32.     Since the County, like other jurisdictions in Virginia, does not record the race of its registered voters, it cannot present direct evidence of minority voter registration or minority participation in voting.  The County has presented available information on voter registration and voter participation. Current data show that a significant proportion of the County's voting age population is registered to vote. As of April 30, 2011, the County had 229,560 registered voters, or 80.3% of the County's 2010 Census voting age population (VAP). The percentage of VAP in

the County that is registered to vote has risen slightly over the last decade. In January 2000, there were 153,333 registered voters in the County, or 78.5% of the County's 2000 Census VAP.

33. Total voter turnout (*i.e.* the percentage of those registered voters who cast ballots) in the County over the past decade has generally remained consistent or increased depending on the type of election at issue. In the presidential election years of 2000, 2004, and 2008, voter turnout increased from 64.91% in 2000 to 69.84% in 2004 and to 75% in 2008. Turnout for election for Governor from 2001 to 2009 remained relatively consistent: 35.87% in 2001, 35.66% in 2005, and 34.77% in 2009. Turnout for the last three non-presidential congressional elections fluctuated, but generally increased: 34.89% in 2002, 45.56% in 2006, and 41% in 2010. Finally, turnout for the remaining two years, 2003 and 2007, for elections for county office not involving an election for governor, also increased, with a turnout rate of 26.66% in November 2003 and 29% in November 2007.

34. On Election Day, the County uses 76 polling places which span Prince William's seven supervisor districts. Each supervisor district operates between 9 and 12 voting precincts. In addition, the County operates three absentee precincts, where residents are able to cast in-person absentee ballots starting 45 days prior to the election at 3 locations, which include two voter registration offices and the Haymarket Museum.

35. In the November 2010 election, Prince William County employed 477 poll workers and 136 precinct and assistant precinct chiefs. Of those 477 poll workers, approximately 111 (23.3%) were African American, 16 (3.4%) were Hispanic, and 15 (3.1%) were Asian. Thus, a total of 143 (30%) poll workers were minority poll workers. Of the 136 precinct and assistant precinct chiefs, approximately 22 (16.2%) were African American, 4

(2.9%) were Hispanic, and 3 (2.2%) were Asian. Thus, a total of 29 minority poll workers (21.3% of the total) were either precinct chiefs or assistant precinct chiefs. Prince William County commits to undertake continued efforts to recruit a diverse group of poll officials to serve in polling places throughout the county in future elections.

36. The Attorney General has received 41 submissions on behalf of the County, School Board, and Towns in the ten years preceding this action. These submissions included, among other things, the post-2000 and post-2010 redistricting plans for the County and School Board, a number of polling place changes, precinct boundary changes, the realignment of voting precincts, and voting method changes related to electronic voting machines. The six most recent submissions were made after the Attorney General reviewed the elections records of the County and its subjurisdictions in the course of considering the County's bailout request and determined that these matters were not reflected in their previous submissions to the Attorney General over the preceding ten years. Four of the unsubmitted changes were compensation changes of salary increases for elected officials (two for County elected officials, one for Dumfries elected officials, and one for Haymarket elected officials). One of the unsubmitted changes concerned a special election for a vacancy on the Haymarket town council, and one concerned the use of paper ballots for a Quantico municipal election.

37. The Attorney General's review also determined that the failure to make such submissions prior to implementation was inadvertent and not the product of any discriminatory purpose. Upon notice from the Attorney General, these matters were promptly submitted for review under Section 5, and the Attorney General interposed no objection to these changes on October 7, 24 and 25, 2011. This Court has granted bailout to other jurisdictions who have

similarly implemented certain minor changes prior to Section 5 review.  *See, e.g.*, *Augusta County v. Gonzales*, No. 05-1885 (D.D.C. Nov. 30, 2005).

38. The County publicized the intended commencement of this action in the manner required by Section 4(a)(4) of the Act prior to its being filed.  The County first published a notice of intent to consider bailout in the local newspaper, *Manassas News and Messenger*, on December 7, 2010, advising of a public presentation concerning bailout at the December 14, 2010, Board of Supervisors meeting, as well as a public comment period at the end of that meeting.  The County subsequently published a notice of intent to seek bailout from Section 5 in the *Manassas News and Messenger,* on February 8, 2011, and February 15, 2011.  Additionally, the County posted the notice at the entrances of the court house, the McCoart Administration Building, the Development Services Building, the Judicial Quadrant Building in Manassas and various other county buildings, as well as on the County's website.  The notices also were posted in each post office in the county.  The County has publicized notice of this proposed settlement simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree.  42 U.S.C. § 1973b(a)(4).  The parties request that this Court wait 30 days after filing of the Joint Motion for Entry of this Consent Judgment and Decree before approving this settlement, while the notice of proposed settlement is advertised.

39. The Attorney General has determined that it is appropriate to consent to a declaratory judgment allowing bailout by the County, pursuant to Section 4(a)(9) of the Voting Rights Act. The Attorney General's consent in this action is based upon his Department's independent factual investigation of the County's fulfillment of all of the bailout criteria, and consideration of all of the circumstances of this case, including the views of minority citizens in

13

the County, and the absence of racial discrimination in the electoral process within the County. This consent is premised on an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that both the statutory objectives of encouraging Section 5 compliance and preventing the use of racially discriminatory voting practices would not be compromised by such consent.

### AGREED FINDINGS ON STATUTORY BAILOUT CRITERIA

40.     Prince William County, the Prince William County School Board, the Town of Dumfries, the Town of Haymarket, the Town of Occoquan, and the Town of Quantico are covered jurisdictions subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c.  Under Section 5 of the Act, the County, School District, and Towns are required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices, and procedures adopted or implemented since the Act's coverage date for the Commonwealth of Virginia.

41.     During the ten years preceding the filing of this action and during the pendency of this action there has been no test or device as defined in Section 4(c) of the Voting Rights Act used within the County for the purpose or with the effect of denying or abridging the right to vote on account of race or color.  42 U.S.C. § 1973b(a)(1)(A).

42.     During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of the County.  Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds.  No action is

14

presently pending alleging such denials or abridgements of the right to vote. 42 U.S.C. § 1973b(a)(1)(B).

43.     During the ten years preceding the filing of this action, and during the pendency of this action, no Federal examiners or observers have been assigned to the County.  42 U.S.C. § 1973b(a)(1)(C).

44.     During the ten years preceding the filing of this action, the County, School District, and Towns have submitted a number of voting changes to the Attorney General for review under Section 5.  The Attorney General has not interposed an objection under Section 5 to any of these changes.  As set forth above, the County or its subjurisdictions inadvertently failed to submit, prior to implementation, six election related practices or procedures to the Attorney General for review under Section 5.  There is no evidence that the County or its subjurisdictions did not submit these matters prior to implementation for any improper reason.  Nor is there any evidence that implementation of such changes, which have now been precleared under Section 5, has had a discriminatory effect on voting that would contravene Congress' intent in providing the bailout option to jurisdictions such as these.  During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for the County, School District, or Towns to repeal any voting changes to which the Attorney General has objected, or to which this Court has denied a declaratory judgment, since no such objections or denials have occurred.  42 U.S.C. § 1973b(a)(1)(D).

45.     During the ten years preceding the filing of this action, and during the pendency of this action, the Attorney General has not interposed any objection to voting changes submitted by or on behalf of the County, School District, or Towns for administrative review under Section 5

15

of the Voting Rights Act.  Nor has any declaratory judgment been denied under Section 5 of the Act by or on behalf of the County, School District, or Towns.  No administrative submissions or declaratory judgment actions under Section 5 on behalf of the County, School District, or Towns are now pending.  42 U.S.C. § 1973b(a)(1)(E).

46. During the ten years preceding the filing of this action, and during the pendency of this action, neither the County, School District, nor Towns have employed voting procedures or methods of election which inhibit or dilute equal access to the electoral process.  42 U.S.C. § 1973b(a)(1)(F)(i).

47. There is no evidence that the County has failed to make constructive efforts in County, School District, and Town elections where voters have complained of intimidation or harassment in the course of exercising their rights protected under the Voting Rights Act in the preceding ten years or during the pendency of this action.  42 U.S.C. § 1973b(a)(1)(F)(ii).

48. Over the preceding ten years, the County has engaged in a variety of constructive efforts, including efforts to expand the opportunity for registration and voting, such as providing opportunities to register to vote through a variety of offices, through the mail and online, conducting voter registration outreach at high schools in the county, providing voter registration applications to minority groups, conducting voter registration outreach campaigns for minority groups, and appointing minority persons as election or poll officials.  42 U.S.C. § 1973b(a)(1)(F)(iii).

49. The County has presented available information regarding rates of voter registration and voter participation over time.  42 U.S.C. § 1973b(a)(2).

50. During the preceding ten year period, neither the County, the School District, nor the Towns have engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color. 42 U.S.C. § 1973b(a)(3).

51. The County publicized the intended commencement of this action prior to its being filed, by placing advertisements in the local newspaper, post offices located within the County, the County Courthouse, the office of Voter Registration and Elections, and public schools within the County. The County has publicized a notice of the proposed settlement of this action, simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree. 42 U.S.C. § 1973b(a)(4).

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1. The Plaintiff, Prince William County, is entitled to a declaratory judgment in accordance with Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1).

2. The parties' Joint Motion for Entry of Consent Judgment and Decree is GRANTED, and Plaintiff Prince William County, the Prince William County School Board, the Town of Dumfries, the Town of Haymarket, the Town of Occoquan, and the Town of Quantico are exempted from coverage pursuant to Section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years pursuant to Section 4(a)(5), 42 U.S.C. § 1973b(a)(5). This action shall be closed and placed on this Court's inactive docket, subject to being reactivated upon application by either the Attorney General or any aggrieved person in accordance with the procedures set forth in Section 4(a)(5), 42 U.S.C. § 1973b(a)(5).

      3.      Each party shall bear its own costs.

Entered this _____ day of _____, 2012.

_____
United States Circuit Judge

_____
United States District Judge

_____
United States District Judge

Approved as to form and content:

For the Plaintiff
PRINCE WILLIAM COUNTY:


/s/ J. Gerald Hebert_____
J. GERALD HEBERT
D.C. Bar No. 447676
Attorney at Law
191 Somervelle Street, #405
Alexandria, VA 22304
Tel (703) 628-4673
Email: hebert@voterlaw.com


ANGELA LEMMON HORAN
County Attorney
1 County Complex Court
Prince William, VA 22192
Phone: (703) 792-6620
Fax: (703) 792-6633

Dated: March 9, 2012

|  |  |
|---|---|
|  | Approved as to form and content: |
|  | For the Defendants ATTORNEY GENERAL OF THE UNITED STATES, *et al.*: |
| RONALD C. MACHEN, JR.<br>United States Attorney<br>District of Columbia | THOMAS E. PEREZ<br>Assistant Attorney General<br>Civil Rights Division<br><br>*/s/ Jaye Allison Sitton*_____<br>T. CHRISTIAN HERREN, JR.<br>ROBERT D. POPPER<br>JAYE ALLISON SITTON<br>jaye.sitton@usdoj.gov<br>JARED M. SLADE<br>jared.slade@usdoj.gov<br>MICHELLE A. MCLEOD<br>michelle.mcleod@usdoj.gov<br>Attorneys, Voting Section<br>Civil Rights Division<br>U.S. Department of Justice<br>Room 7254 NWB<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530<br>Telephone:  (800) 253-3931<br>Facsimile:   (202) 307-3961 |

Dated: March 9, 2012